IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NEW ENGLAND LIFE INSURANCE COMPANY,  )
                                      )
       Plaintiff,                     )
                                      )
 -vs-                                 )
                                        Civil Action No. 07-300
                                      )
STEVE LINKOWSKI, JR., et al.,         )
                                      )
                                      )
       Defendants.                    )

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

## OPINION[1]

Defendants Minnesota Life, Angela Ferrante, Paul Hilliard, Robert Corcoran, Gary Klobchar, Ibrahim Fetahi, and Dana Curtin ("the Minnesota Life Defendants") have filed a Motion to Dismiss. See Docket No. 48. Though the Motion was initially directed at Plaintiff New England Life Insurance Company's Complaint, I permitted New England leave to file an Amended Complaint. I did so with the understanding that I would treat the Minnesota Life Defendants' Motion to Dismiss as being

---

[1] Given that this Court has already entertained a Motion for Temporary Restraining Order in this case, the parties are presumed familiar with the facts and procedural history and the same will not be recounted here.

1

directed at the Amended Complaint.[2]  New England has responded to the Motion and the issues are now ripe for resolution.

STANDARD OF REVIEW

In deciding a Motion to Dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. <u>Colburn v. Upper Darby Twp.</u>, 838 F.2d 663, 666 (3d Cir. 1988), <u>cert. denied</u>, 489 U.S. 1065 (1988).  I may dismiss a complaint only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957). In ruling on a motion for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide the defendants with adequate notice to frame an answer." <u>Colburn</u>, 838 F.2d at 666.

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. <u>See Miree v. DeKalb County, Ga.</u>, 433 U.S. 25, 27 n.2 (1977).  Moreover, the plaintiff must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. <u>See</u> Fed. R. Civ. P. 8(2)(a) and <u>Conley</u>, 355 U.S. at 45-46.  Matters outside the pleadings should not be considered.

---

[2] As set forth in the Order granting leave to amend (Docket No. [70], the proposed Amended Complaint did not seek to cure any of the deficiencies alleged by the Minnesota Life Defendants in their Motion to Dismiss.  Rather, it simply added an additional claim directed at another party.  As such, I considered it a waste of the parties' time and resources to deny the Motion to Dismiss as moot based upon the filing of the Amended Complaint and force the Minnesota Life Defendants to refile the same Motion to Dismiss again.

This includes "any written or oral evidence in support of or opposition to the pleadings that provides some substantiation for and does not merely reiterate what is said in the pleadings." Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1366 (West 1990).

ANALYSIS

I. COUNTS III AND IV - BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTIES

In Count III, New England contends that Hilliard and Ferrante breached the covenant not to compete clause of their employment contracts when they solicited New England agents to work for Minnesota Life and / or when they contacted New England policyholders. In Count IV, New England contends that Hilliard and Ferrante breached their duty of loyalty by attempting to induce and in fact inducing other New England agents to leave their employment in order to work for a competitor.[3] The Minnesota Life Defendants insist that Counts III and IV fail to state a claim upon which relief can be granted. Specifically, they argue that the covenant not to compete is not enforceable under Massachusetts law[4] and that, even if enforceable, Hilliard and Ferrante did not breach the restrictions.

The covenant not to compete at issue provides that:

> [f]or a period of two years after termination of the Contract, the Agent *shall not, directly or indirectly, contact the policyholders or contractholders of the*

---

[3] New England also contends in Count IV that Hilliard and Ferrante breached their fiduciary duties by taking New England's files, including confidential and trade secret information. The Minnesota Life Defendants challenge this allegation elsewhere.

[4] The parties appear to agree that the sales representatives' contracts are governed by Massachusetts law.

> *Company* in the territory of the Managing Partner or policyholders of the Company owning Products for which the Agent is agent of record for the purpose of inducing any policyholder or contractholder to lapse, cancel, fail to renew or replace any Product. For a period of one hundred eighty (180) days after termination of the Contract the Agent *shall not, directly or indirectly, contact or contract with any agent of the Managing Partner for the purpose of inducing such agent to solicit* in the territory of the Managing Partner on behalf of any other insurance company or financial services organization. If the 180 day or two year periods referred to herein shall be deemed unenforceable at law, then such periods shall be reduced to such periods as shall be legally enforceable.

See Docket No. [57-2], p. 44 (emphasis added).

I consider first the Minnesota Life Defendants' argument that the covenant itself is unenforceable. "Noncompetition agreements are generally enforceable so long as they are reasonable under the circumstances." Runway Salon, Inc. v. Garey, 68 Mass. App. Ct. 1105, 860 N.E.2d 703, 2007 WL 269846 at * 1(Jan. 31, 007) (citations omitted). "In determining whether a covenant will be enforced in whole or in part, the reviewing court must consider whether (1) it protects the legitimate business interest of the employer against harmful conduct of the former employee; (2) it is supported by consideration; (3) the time, space, and geographical restraints imposed on the former employee are reasonable in the circumstances; and (4) the covenant is consistent with public policy." Id. (citations omitted). Here, the Minnesota Life Defendants challenge only the first factor - whether the covenant protects New England's legitimate business interests.

Specifically, they reason that "[e]mployees (or agents) should be free to discuss

4

their current work conditions with each other, to consider other business opportunities, and to move to companies that provide them with better opportunities and conditions." See Docket no. [49], p. 8. The Minnesota Life Defendants contend that "[t]hrough these covenants, New England attempts to restrict these legitimate activities that encourage businesses to provide healthy, supportive work environments and allow individuals to pursue business opportunities at companies that will allow them to better meet their and their families' needs." Id., p. 8-9. The Minnesota Life Defendants view the covenant as simply restricting third parties' freedom in the marketplace and preventing ordinary competition.

    I disagree. The covenant, as it is written, does not prevent third parties from moving freely in the marketplace. It does not prevent employees from discussing current working conditions or even discussing business opportunities. What it does preclude is contacting, directly or indirectly, an agent of the Managing Partner for the purpose of *inducing such agent to solicit* in the territory of the Managing Partner on behalf of a competitor. The Minnesota Life Defendants have not identified any cases construing Massachusetts law which found that such a clause did not protect a legitimate business interest. My research revealed that courts have enforced such clauses. See Modis, Inc. v. The Revolution Group, Ltd., Civ. No. 99-1104, 1999 WL 1441918 at * 7-8 (Mass. Super. Dec. 29, 1999) (finding that a restrictive covenant that prohibits raiding of employees protects legitimate business interests such as good-will and confidential information); Browne v. Merkert Enterprises, Inc.,

5

Civ. No. 98-386, 1998 WL 151253 at * 6 (Mass. Super. March 31, 1998) (issuing an order enforcing a covenant which prohibited the employee from "contacting or soliciting Merkert's employees with the purpose of encouraging any Merkert employee to terminate his or her employment with Merkert....").  Consequently, I reject this basis for dismissal.

I thus turn to the Minnesota Life Defendants' next argument, that "there has been no breach of these contracts, even accepting all of New England's allegations as true." See Docket No. [49], p. 9.  This argument is based upon the contention that a non-solicitation provision cannot be breached when another agent or employee initiates contact.  While I agree with this broad proposition, I do not find that dismissal is warranted.

The Federal Rules of Civil Procedure require notice pleading.  That is, New England is required to give fair notice of its claim and the grounds upon which it rests. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citations omitted).  Counts III and IV satisfy this requirement.  Certainly New England does include some level of factual detail in the Amended Complaint - it mentions Fasenmyer.  It is not, however, constrained by this level of detail and will be permitted to develop further factual detail during the discovery period.  The Minnesota Life Defendants will be able to challenge the factual sufficiency of the claims at the conclusion of discovery, in a motion for summary judgment.

Further, the Minnesota Life Defendants' reliance upon my findings issued in connection with the Motion for Temporary Restraining Order ("TRO") is an

unconvincing basis for granting dismissal of the claims.  A Motion for TRO tests the likelihood of success on the merits.  In deciding such a Motion, I am making factual determinations (though those determinations are preliminary in nature and subject to change).  That is an entirely different proposition than whether it appears beyond doubt that New England can prove no facts which would entitle it to relief on those claims, which is my duty at this procedural juncture.

Consequently, the Motion to Dismiss Counts III and IV is denied.

II. COUNTS V AND VI - AIDING AND ABETTING AND TORTIOUS INTERFERENCE

In Count V, New England contends that Minnesota Life aided and abetted Defendant Linkowski's breach of his fiduciary duties.  In Count VI, New England claims that Minnesota Life wrongfully interfered with its employment contracts.  The Minnesota Life Defendants seek the dismissal of both claims.

More specifically, the Minnesota Life Defendants contend that the aiding and abetting Linkowski's breach of fiduciary duties claim is fatally flawed because "the Complaint contains no allegations that Linkowski recruited any agents, let alone provided any inducement for anyone to leave New England." See Docket No. [49], p. 11. They argue that, "[w]ith no facts or allegations to support its claim for breach of fiduciary duty against Linkowski, its claim for aiding and abetting such a breach must fail." Id., citing, Huber v. Taylor, 469 F.3d 67, 79 (3d Cir. 2006) ("Proof of a breach of fiduciary duty is required to maintain a claim of aiding and abetting a breach of fiduciary duty.").  This argument is unconvincing.

Again, as stated above, New England need only satisfy Rule 8's pleading

7

requirements. It has done so with respect to Count V. Further, the Minnesota Life Defendants' citation to the Huber v. Taylor, 469 F.3d 67 (3d Cir. 2006) decision is unpersuasive. The Third Circuit Court's requirement of "proof" with respect to a breach of fiduciary duty was made in the context of a motion for summary judgment. Obviously, at the motion for summary judgment stage a plaintiff must provide evidence in support of a claim in order to maintain that claim. Such is not the case with a Rule 12(b)(6) challenge. Consequently, the Motion is denied in this regard.

The Minnesota Life Defendants' challenge to the tortious interference claim is equally unavailing. They contend that the claim must be dismissed because the restrictive covenants are not enforceable and because the allegations set forth in the Amended Complaint do not demonstrate a breach of such restrictive covenants. For the reasons set forth in my earlier discussion regarding the enforceability of the restrictive covenants and the sufficiency of the pleadings, the Motion is denied in this regard.

Finally, the Minnesota Life Defendants' argument that Minnesota Life is a competitor of New England, and is thus free to offer better business opportunities to people and thus should not be liable for tortious interference, is not convincing at this stage. Reliance upon Boyce v. Smith-Edwards-Dunlap Co., 580 A.2d 1380, 1390 (Pa. Super. Ct. 1990) and the other cases cited in the brief are misplaced as, again, those cases discuss the lack of evidence, for instance, that the defendant induced the plaintiff's employees to work for the defendant with the intent of "crippling"

and "destroying" the plaintiff. Here, New England is entitled to engage in discovery on this issue.

III. COUNT VII - CONVERSION

In Count VII of the Amended Complaint (which is asserted against all the Defendants), New England contends that the Individual Defendants took with him or her client files and other items which were the legal property of New England, without justification or consent. The Minnesota Life Defendants seek dismissal of this claim. They argue that the Incentive Career Contracts identify client files as belonging to the agent. As such, the Minnesota Life Defendants reason, retaining such files cannot have been an act of conversion.

The parties identify a number of provisions in the Incentive Career Contracts which they contend impact resolution of this issue. For instance, Ferrante's Contract includes a "Policyholder Records" provision:

> The Agent agrees to furnish for inspection and copying during regular business hours to the Company's authorized representative and any regulatory body any and all books and policyholder and contract holder records in the Agent's possession in which information regarding customers of the Company is recorded. Customers of the Company shall include persons holding policies and contracts obtained through New England Financial Distributors.

See Docket No. 50-3, Ferrante Contract, § 10. The Minnesota Life Defendants argue that this provision indicates that the records belong to and remain the property of the agents.

Another provision in the Contracts - entitled "Proprietary Materials" - does call

9

for the return of materials to New England:

> The Agent understands and acknowledges that, from time to time, the Company and /or the Managing Partner may furnish or provide the Agent with, or the Agent may otherwise acquire, computers, software, publications (including without limitation training books, manuals and binders), audiovisual materials (including without limitation videotapes and audiotapes), and other goods or services, of any kind or nature whatsoever, related to the Company, the Products of the Company, or the activities to be performed by the Agent under this Contract (collectively, the "Materials"). The Agent agrees that, except as otherwise expressly provided in writing, all past, present and future rights, of any kind or nature whatsoever, in and to the Materials, including without limitation all tangible and intangible rights, specifically including without limitation all patent, trademark, copyright and trade secret rights, and any other proprietary and intellectual property rights of any kind or nature whatsoever, are and shall at all times be, as between the parties, the sole and exclusive property of the Company. In the event that the Contract is terminated, the Agent's right to use the Materials, or any of them, shall automatically and immediately cease, and the Agent shall immediately turn over to the authorized representative of the Company or the Managing partner all originals, copies and other tangible embodiments thereof.

Id., § 12. The Minnesota Life Defendants note that "proprietary materials" are not defined to include policyholder records. Similarly, the Minnesota Life Defendants add, another provision (Section 11), which also requires the Agents to return certain items to New England (office furniture and equipment) does not call for the return of policyholder records.

New England counters that Section 12 is broad enough in its definition of "proprietary materials" to include policyholder records. Further, New England cites

to Section 9 of Fetahi's Contract, which provides:

> Policyholder Records.
> The Agent agrees to furnish during regular business hours to the Company's authorized representative any and all books and policyholder records in the Agent's possession which belong to the General Agent of the Company. This shall not include any books and records which belong to the Agent.

See Docket No. 50-3, Fetahi Contract, § 9. New England contends that this provision explicitly recognizes that the policyholder records belong to New England.

I need not resolve the competing language of the various contractual provisions at this juncture. The Amended Complaint includes language stating that the Defendants took boxes of documents and files that were stored in New England's Pittsburgh office. The Amended Complaint also contains allegations that information was taken from an administrative employee's, the office manager's and the "new business specialist's" hard drives. Obviously, such information also would not have been in the Individual Agent Defendants' possession either. Under even the Minnesota Life Defendants' reading of Section 10 of Ferrante's Contract, such items would not have been in Ferrante's possession. As such, the claim will go forward. The Motion to Dismiss is denied.

IV. <u>COUNT VIII - TRADE SECRET MISAPPROPRIATION</u>

In Count VIII of the Amended Complaint, New England argues that the Defendants misappropriated New England's trade secret information and have used and will continue to use that trade secret information in order to compete with it. The Minnesota Life Defendants seek dismissal of this claim. They urge that dismissal

11

is appropriate because New England has failed to allege the necessary elements of a misappropriation of trade secrets cause of action and because the Incentive Career Contracts designate the client records as belonging to the agents.

I reject these arguments. As stated above, at this procedural juncture, New England need merely satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. The allegations set forth in Count VIII, and those preceding Count VIII, which are incorporated by reference, give the Defendants clear notice that New England is seeking relief for misappropriation of trade secrets. The Minnesota Life Defendants' citation to <u>Moore v. Kulicke & Soffa Indus., Inc.</u>, 318 F.3d 561, 566-67 (3d Cir. 2003) is not persuasive as it discusses the elements of a misappropriation of trade secrets claim in the context of a charge to a jury. Here, the question is whether, viewing the allegations in a light most favorable to New England, New England can prove any set of facts entitling it to relief. I find that it can. Indeed, as stated above, the Amended Complaint alleges that the Defendants took information which was not in the possession of the agents. As such, even if the Minnesota Life Defendants are correct that the Career Incentive Contracts grant the agents possession of the policyholder information (which I have not yet decided), the claim would go forward anyway. Accordingly, the Motion to Dismiss Count VIII is denied.

V. <u>COUNTS I AND IX - UNFAIR COMPETITION AND CIVIL CONSPIRACY</u>

In Count I, New England contends that the defendants have attempted to compete directly with it by misappropriating its trade secrets and confidential

information, by soliciting its clients based on the misappropriated information, and by recruiting New England's agents in violation of the non-solicitation provisions. In Count IX, New England charges that the Defendants' conduct constitutes a civil conspiracy under Pennsylvania law. The Minnesota Life Defendants seek the dismissal of these claims. More specifically, citing to the decision in <u>Sims v. Mack Trucks, Inc.</u>, 463 F. Supp. 1068, 1070 (E.D. Pa. 1979), the Minnesota Life Defendants argue that "[w]hen one claim relies on the same factual predicate as another claim, then both claims are appropriately considered a single cause of action." <u>See</u> Docket No. 49, p. 16.

Again, I reject the Minnesota Life Defendants' position. Significantly, the <u>Sims</u> court did not consider whether a plaintiff could advance different legal theories in the same complaint based upon the same nucleus of operative facts. Instead, the <u>Sims</u> court faced the issue of whether a previous grant of summary judgment against the plaintiffs on unfair competition and unlawful conversion of trade secrets claims operated as res judicata with respect to an unfair competition claim advanced in a subsequent suit. Because the trade secret claim and unfair competition claim had the same factual predicate, the court found the doctrine of res judicata applicable. I question how the Minnesota Life Defendants can find this decision applicable to the case at bar, given the radically different procedural postures at issue. The Motion to Dismiss Counts I and IX is denied.

<u>* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *</u>

<u>ORDER OF COURT</u>

AND NOW, this **5th** day of July, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motion to Dismiss (Docket No. [48]) is DENIED in its entirety.

It is further ORDERED, that Defendant Yvonne Cavanaugh's Motion to Dismiss Under Rule 12(b)(6) and Motion to Strike Under Rule 12(f) (Docket No. [59]) is denied as moot, Plaintiff having voluntarily dismissed its claims against Defendant Cavanaugh. <u>See</u> Docket No. [75].

BY THE COURT:

/S/ <u>Donetta W. Ambrose</u>

Donetta W. Ambrose,
Chief U. S. District Judge